IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:10-CT-3166-BO

| | | |
|---|---|---|
| CHAD BUMGARNER, et al, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| NCDOC, et al., | ) | |
| Defendants. | ) | |

Plaintiffs are presently inmates in the custody of the North Carolina Department of Correction ("DOC"). Plaintiffs are also disabled.[1] This action was brought against the DOC other defendants for defendants' alleged unlawful practices of discriminating against plaintiffs, excluding plaintiffs from participation in DOC's sentence reduction credit programs, and denying plaintiffs the benefits of DOC's sentence reduction credit programs, because of plaintiffs' disabilities. As a result, plaintiffs assert the disabled inmates in the DOC are serving longer prison sentences than they would serve if they were not disabled, in violation of Title II of the Americans with Disabilities Act of 1990 ("ADA") and Section 504 of the Rehabilitation Act ("Rehabilitation Act") of 1973. Plaintiffs have filed a motion for class certification under Rule 23 of the Federal Rule of Civil Procedure. (D.E. # 3) Plaintiffs seek to present a class of all present and future disabled inmates of the DOC "who have been, and may in the future be, discriminated against, excluded from participation in, and denied the benefits of the DOC's sentence reduction credit programs by reason of their disabilities." Plaintiffs seek declaratory

---

[1]The complaint and motion refer to named plaintiffs as "qualified individuals with disabilities" under the ADA and the Rehabilitation Act and instruct the court the individuals shall be referred to as "disabled."

and injunctive relief under the ADA and each allege that individually they have "all sought access to and been denied participation in and benefits of sentence reduction credit programs administered by the DOC by reason of their disabilities." (Compl. ¶¶ 45-50). For the following reasons, the class certification is allowed.

## FACTS

All named plaintiffs are "qualified individuals with disabilities" under ADA and the Rehabilitation Act who are in the custody and control of the DOC. (Compl. ¶ 21) The DOC administers and oversees the sentence reduction credit programs. (Compl. ¶ 22) Through this program inmates within the DOC may earn credits that shorten their terms of incarceration. (Id.) When sentence reduction credits are awarded to an inmate, the DOC subtracts the credits from the inmate's total term of imprisonment and advances the inmate's projected release date. (Compl. ¶ 22) The net result of the discrimination, it is alleged, is that disabled plaintiffs serve longer terms of imprisonment than inmates without disabilities. (Compl. ¶ 44)

Plaintiffs contend the exclusion from participation and denial of the benefit of the sentence reduction credit programs by reason of their disabilities occurs in a number of different ways. Plaintiff Bumgarner alleges the DOC failed to provide him with access to the medical gain time program for over a year after his DOC admission, despite disabilities preventing him from accessing all work assignments through which he could earn conventional gain time. While he did earn some gain time, it was only through attending classes which "severely taxed his physical capacities." (Compl. ¶ 46) When the DOC began awarding sentence reduction credits to plaintiff Bumgarner through the medical gain time program, it did so at two-thirds the rate available to non-disabled inmates. (Compl. ¶ 46)

2

As for plaintiff Gaud, it is alleged that the DOC denied plaintiff access to sentence reduction credits because of his disability for much of his time in prison before recognizing his disability. Only then did the DOC begin to award sentence reduction credits through the medical gain time program. (Compl. ¶ 47) Plaintiff Gaud also receives credits at two-thirds the rate available to non-disabled inmates. (Compl. ¶ 47)

As for plaintiff Hall, it is alleged that during the first two years of his incarceration, the DOC refused to acknowledge the severity of his disability and, by reason of his disabilities, granted him only sporadic access to conventional sentence reduction credit programs. (Compl. ¶ 48.) In late 2007, following Hall's transfer to a facility that routinely awards medical gain time, Hall's status was altered. At that point, he was granted access to the medical gain time program. Similarly, the DOC denies Hall the opportunity to earn sentence reduction credits at the rate available to nondisabled inmates, and awards Hall sentence reduction credits only at the lower rate set forth for "medically unfit" inmates. (Compl. ¶ 48)

As for plaintiff Howell, he alleges, the DOC belatedly granted him access to the medical gain time program (in June 2008) and awarded him credits at a rate lower than the rate available to non-disabled inmates. Then in February 2010 he was removed from the program when transferred to a facility that "does not grant medical gain time". (Compl. ¶ 49) His disability did not change. The DOC currently "denies Howell all access to and benefits of sentence reduction credit programs by reason of his disability." (Compl. ¶ 49)

Plaintiff Johnson alleges that he has been excluded from participation in the benefits of sentence reduction credit programs since his April 2010 diagnosis of lung cancer and the surgical removal of one lung. (Compl. ¶ 50) Johnson is in 24-hour care and medically unavailable to

3

work. Thus, the DOC excludes Johnson from the medical gain time program and all other sentence reduction credit programs by reason of his disability. (Compl. ¶ 50)

Plaintiff Payne alleges that he is also excluded by the DOC from participation in and the benefits of all sentence reduction credit programs. It has been explained that his restrictions are not "severe enough" to qualify him for the medical gain time program, although a Nurse Supervisor has confirmed that "due [to] inmate Payne's medical condition he can not work or go to school". (Compl. ¶ 51)

## ANALYSIS

To be certified as a class action, an action must meet the requirements of both Fed. R.Civ.P. 23 (a) and (b). Haywood v. Barnes, 109 F.R.D. 568, 575 (E.D.N.C. 1986). Rule 23(a) requires that a precisely defined class exist and the proposed class representatives be members of the putative class. Haywood, 109 F.R.D. at 576; see East Texas Motor Freight Sys., Inc. v. Rodriguez, 431 U.S. 395, 403 (1977) ("a class representative must be a part of the class"). In addition, the four prerequisites expressly set out in Rule 23(a) must be satisfied. Haywood, 109 F.R.D. at 576. The four prerequisites are: (1) the class is so numerous that joinder of all members is impracticable (hereinafter "numerosity requirement"); (2) there are questions of law or fact common to the class (hereinafter "commonality requirement"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (hereinafter "typicality requirement"); and (4) the representative parties will fairly and adequately protect the interests of the class (hereinafter "adequacy-of-representation requirement"). Fed. R. Civ. P. 23(a).

Once the prerequisites under Rule 23(a) are met, the action must next satisfy one of the three alternative sets found within Rule 23(b). The conditions under Rule 23(b) include:

(1) prosecuting separate actions by or against individual class members that would create a risk of:

    (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

    (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. . . .

i. <u>Satisfaction of Rule 23(a) Prerequisites</u>

As an initial matter, the court finds plaintiffs have proposed a precisely defined class of which they are members. The court now must determine whether plaintiffs are able to satisfy the four prerequisites of Rule 23(a).

Beginning with the numerosity requirement of Rule 23(a)(1), the court finds the putative class is reasonably estimated by the parties to contain over 12,000 inmates currently housed by

5

the DOC who "suffer from a physical impairment or a mental condition, and that approximately 8,000 inmates within the DOC are limited by such a condition in their ability to work." The class is therefore so numerous that joinder of all putative class members is impracticable. Therefore, the court finds that the numerosity requirement is satisfied.

As for the commonality requirement, Rule 23(a)(2) does not require that all questions of law or fact be common to each member of the class. See Haywood, 109 F.R.D. at 577. Rather, the commonality requirement is satisfied where the plaintiffs share a single common question. Id. In a lawsuit wherein individuals with varying disabilities challenge policies and practices that affect all of the putative class members, factual differences regarding their disabilities does not defeat commonality. See Armstrong v. Davis, 275 F.3d 849, 868 (9th Cir. 2001). The Fourth Circuit has reiterated this proposition that the typicality requirement does not require that the "plaintiff's claim and the claims of the class member be perfectly identical or perfectly aligned." Dieter v. Microsoft Corp., 436 F.3d 461, 467 (4th Cir. 2006). In this case, there are several common issues of both law and fact among the proposed class members. Common questions of law include, but are not limited to, whether the ADA and the Rehabilitation Act prohibit defendants from (a) excluding otherwise qualified disabled inmates from participation in, and benefits of, the DOC's sentence reduction credit programs by reason of their disabilities; and (b) awarding medical gain time to disabled inmates at a lower rate than the rate of gain time available to non-disabled inmates.

Common questions of fact include, but are not limited to the following: (a) whether the DOC excludes disabled inmates from participation in, and denies disabled inmates the benefits of, both the medical gain time program and traditional sentence reduction credit programs

6

because of their disabilities; (b) whether the DOC excludes disabled inmates from participation in, and benefits of, the medical gain time program based upon their placement in facilities which do not award medical gain time, while preventing such inmates from accessing traditional sentence reduction credit programs because of their disabilities; (c) whether the DOC excludes disabled inmates with temporary impairments from participation in, and benefits of, sentence reduction credit programs because of their disabilities; (d) whether the DOC fails to provide available assignments to disabled inmates who are designated as limited for some but not all work or program assignments by reason of their disabilities; (e) whether the DOC denies disabled inmates the benefits of sentence reduction credit programs by awarding medical gain time to some disabled inmates at a rate lower than the rate available to non-disabled inmates; and (f) whether the DOC, as a result of the alleged violations, forces disabled inmates to serve longer prison sentences by reason of their disabilities. The court finds that these common issue are sufficient to satisfy the commonality requirement.

Turning to the Rule 23(a)(3) typicality requirement, this requirement is met where the claim "arises from the same event or course of conduct which gives rise to the claims of other class members and is based on the same legal theory." See Haywood, 109 F.R.D. at 578. The focus on the inquiry for this requirement is whether the plaintiffs and each member of the class "have an interest in prevailing on similar legal claims." Id. Here, the claims of the class representatives and the proposed class all arise from the same operative facts in that they all suffer the same injury as a result of DOC's policies and procedures, ie. denial of access to and the benefits of the DOC's sentence reduction credit programs because of their disabilities and discrimination because of their disabilities. Further, the parties have shown that plaintiffs and

7

the class members have an interest in prevailing on the same legal claims. Based upon the foregoing, the court finds that the typicality requirement is met.

Finally, the court must determine whether the named plaintiffs fairly and adequately represent the class. The inquiry of adequacy in representation as required under Rule 23(a)(4) is the moving party must show that "1) plaintiff's interests are [not] antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." Baffa v. Donaldson, 222 F.3d 52, 60 (2d Cir. 2000); see also, Gunnells v. Healthplan Servs., 348 F.3d 417, 430 (4th Cir. 2003).

The named plaintiffs are, as indicated, all members of the proposed class. In addition, plaintiffs contend they are aware of their duties as class representatives, will fairly and adequately represent the interests of the class as a whole, have no conflicts of interest, and have a genuine personal interest in the outcome of this action. Finally, plaintiffs are represented by North Carolina Prisoner Legal Services (hereinafter "NCPLS"), which this court finds has the requisite experience in handling prisoner civil rights litigation. Therefore, the adequacy of representation requirement of Rule 23(a)(4) is satisfied.

In summary, the court has applied the certification prerequisites of Rule 23(a) to this case, and found that they are met. Therefore, the court now must determine whether plaintiffs satisfy Rule 23(b).

ii.  Satisfaction of Rule 23(b) Conditions

Plaintiffs contend that this case satisfies the conditions set forth in Rule 23(b)(1)(A), 23(b)(1)(B), and 23(b)(2). To satisfy Rule 23(b), the plaintiff only is required to show that the proposed class meets one of its three conditions. Haywood, 109 F.R.D. at 580. The court finds

that in this case plaintiffs satisfied Rule 23(b)(2). Rule 23(b)(2) has been liberally applied in the area of civil rights, including suits challenging conditions and practices at various detention facilities, as well as claims for violations of the ADA and Rehabilitation Act. See, e.g., Armstrong, 275 F.3d at 868; and Santiago v. City of Philadelphia, 72 F.R.D. 619, 624 (1976). "The essential consideration is whether the complaint alleges that the plaintiffs have been injured by defendants' conduct which is based on policies and practices applicable to the entire class." Santiago, 72 F.R.D. at 624. Plaintiffs in this action are challenging the policies and practices of the DOC in excluding disabled inmates from participation in and denial of disabled inmates from benefitting from sentence reduction credits and discriminating against the disabled inmates in the administration of sentence reduction credit programs. Plaintiffs seek declaratory and injunctive relief appropriate to the class as a whole and meet the requirements of Rule 23(b)(2). In sum, plaintiffs have satisfied both Rule 23(a) and Rule 23(b). Accordingly, all of the requirements for class certification are met.

## CONCLUSION

For the foregoing reasons, the parties' motion to certify the class as a class action pursuant to Fed.R.Civ.P. 23 (DE # 3) is GRANTED.

SO ORDERED, this the 19 day of September 2011.

*Terrence W. Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE